IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARKE E. HAYES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-0323-CVE-FHM |
| | ) | |
| JOE M. ALLBAUGH, | ) | |
| | ) | |
| Respondent.[1] | ) | |

**OPINION AND ORDER**

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt # 1) filed by petitioner Marke Hayes, a state inmate appearing pro se. Petitioner is serving a sentence of life without the possibility of parole and a consecutive sentence of life with the possibility of parole following his convictions, in the District Court of Tulsa County, Case No. CF-2011-513, for first degree murder and possession of a firearm after former conviction of a felony. Respondent filed a response in opposition to the petition (Dkt. # 5) and provided the state court records (Dkt. ## 5, 6, 7) necessary for the adjudication of petitioner's claims. Petitioner filed a reply (Dkt. # 8). For the reasons discussed below, the Court finds petitioner is not entitled to federal habeas relief and denies the petition for a writ of habeas corpus.

---

[1] Petitioner is incarcerated at the Cimmaron Correctional Facility, in Cushing, Oklahoma. Joe M. Allbaugh, the Director of the Oklahoma Department of Corrections, is therefore substituted in place of Tim Wilkinson as party respondent. See Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts. The Clerk of Court shall note this substitution on the record.

## BACKGROUND

Under 28 U.S.C. § 2254(e)(1), a state court's factual findings are presumed correct unless a habeas petitioner rebuts that presumption "by clear and convincing evidence." Following review of the state court record, trial transcripts, trial exhibits, and other materials submitted by the parties, the Court finds the factual background provided in the Oklahoma Court of Criminal Appeals' decision affirming Petitioner's conviction and sentence is adequate and accurate to describe the underlying events that led to petitioner's charges. Therefore, the Court adopts the following summary as its own:

> During the morning of February 5, 2011[,] on North Main Street in Tulsa, Joseph Garfield was using his shovel to break ice in his driveway so he could drive to the airport to pick up his stepbrother. His wife, Sarah Garfield, had stayed home from work because of a snowfall and was inside their house. While Mr. Garfield was shoveling, Appellant Marke Hayes, who lived across the street, approached him and began a conversation, apparently seeking to borrow Garfield's shovel because his truck was buried in snow. Kenneth Love and his mother also had homes in the neighborhood. Love was outside shoveling his mother's driveway when he noticed the two men talking. They did not appear to be arguing. As he walked toward the two men, he heard Hayes say something like, "[s]o I can't use your shovel" (Tr. Vol. 3 at 422). Love had two shovels and offered to help Hayes dig out his truck. Hayes rejected that offer saying, "[w]ell, I got something I got to go do" (Tr. Vol 3 at 425). Joseph Garfield continued shoveling and Love returned to his mother's driveway and did the same.
> From inside her home, Sarah Garfield heard a loud "pop" that sounded like a gunshot. She looked out the window and saw Hayes standing at the end of her driveway holding a Colt .45 hand gun. She saw him lift his shirt and put the gun in his pants. He then bent down and picked up a shovel. She realized then it was her husband's shovel and her husband was lying on the ground. She saw Hayes use the shovel to strike her husband in the head and pile snow on top of him. Sarah Garfield immediately locked the door and called 911.
> Tulsa Police Officer Debbie Crisp was dispatched to the scene. She came upon Hayes near the intersection of Pine and Cincinnati and called for back-up. When the back-up officer arrived, Officer Crisp pointed her gun at Hayes and called out his name. When he turned toward her, she placed him under arrest finding and removing the Colt .45 from under his coat.
> Joseph Garfield died at the scene before emergency personnel arrived.

2

Dkt. # 5-3, *Hayes v. State*, No. F-2012-695 (Okla. Crim. App. 2014) (unpublished) (hereafter, "OCCA Op."), at 2-3.[2]

Based on these events, the State charged petitioner, in the District Court of Tulsa County, Case No. CF-2011-513, with one count of first degree murder, in violation of OKLA. STAT. tit. 21, § 701.7, and one count of possession of a firearm, after former conviction of a felony, in violation of OKLA. STAT. tit. 21, § 1283. Dkt. # 6-16, at 22.

At the preliminary hearing, the victim's wife, Sarah Garfield, testified that before he was killed, her husband came inside from shoveling snow in the driveway, "paced rather quickly toward the dining room," "looked at [her]," and said, "I told you there's something wrong with Marke. Marke is crazy." Dkt. # 6-2, at 42. Her husband then "continue[d] out the front door." Id. at 43. Garfield described her husband's demeanor when he made the statement as "[a]nxious" and she surmised he "was concerned about something." Id. at 43-44. Moments later, Garfield heard a "pop" which she recognized as the sound of a gunshot. Id. at 44-46. Before trial, the State moved to exclude the victim's statement referring to petitioner as "crazy," as inadmissible hearsay. Dkt. # 6-8, at 15-19. The trial court ruled that it would exclude the statement as hearsay unless defense counsel could lay a foundation at trial supporting a hearsay exception. Id. at 20.

During opening statements, defense counsel informed the jury that it would hear evidence supporting that petitioner was legally insane at the time of the murder. Dkt. # 6-9, at 323-27. During the State's case-in-chief, the trial court rejected defense counsel's argument that sufficient foundation had been laid through the testimony of Sarah Garfield or Kenneth Love to admit the

---

[2]     Unless otherwise indicated, the Court's record citations refer to the CM/ECF page numbers in the upper right-hand corner of each document.

victim's statement referring to petitioner as "crazy" as a present sense impression or an excited utterance, and reaffirmed its decision to exclude the statement on hearsay grounds. Dkt. # 6-10, at 51-62.

After the state rested, defense counsel presented testimony from two witnesses supporting that petitioner was mentally ill and had exhibited bizarre behavior both before and after the shooting. Dkt. # 6-11, at 21-58, 122, 130-31, 146-65. After these two witnesses testified, defense counsel advised the trial court that petitioner had decided to testify. Dkt. # 6-11, at 199. The court conducted a hearing outside presence of the jury to determine whether petitioner understood the ramifications of his decision to testify. Dkt. # 6-11, at 199. The court placed petitioner under oath, asked petitioner several questions, and ascertained from petitioner's answers that petitioner (1) was taking prescribed medication, (2) was thinking clearly, (3) was not having any confusion in his thought process, (4) was not having difficulty focusing on courtroom proceedings, (5) understood he had a right to testify or not testify, (6) felt he had enough time to consider his decision to testify, (7) had a chance to discuss his decision with defense counsel, (8) felt "confident" with his decision, (9) understood that the State would be allowed to cross-examine him about his prior adult felony convictions,[3] (10) understood that if he chose not to testify the jury would be instructed it could not weigh that against him, and (11) did not feel that anyone had threatened or coerced him to make his decision to testify. Dkt. # 6-11, at 199-204. At the end of the court's colloquy with petitioner, defense counsel told the court that petitioner's decision to testify was "against counsel's advice" and

---

[3] When the trial court asked petitioner if he understood cross-examination would include questions about his "previous felony convictions," petitioner asked whether that would include his juvenile record. Dkt. # 6-11, at 203. The court clarified it would pertain only to the "adult felony convictions on the second page of th[e] Information," and petitioner verbalized his understanding. Id.

4

that counsel did not believe it was in petitioner's best interest to testify. Id. at 205. The court asked petitioner several more questions to clarify whether petitioner understood he would be testifying against counsel's advice. Ultimately, the court asked petitioner, "Even knowing this is against his advice, you think, based upon everything you are seeing in trial, everything you've talked to [defense counsel] about, you still think it's in your best interest?" Petitioner replied, "Correct." Id. at 207. The court then ruled,

> All right. I'll allow it. I believe that the record has demonstrated that this is a knowing and voluntary decision. Nobody has forced or coerced him to do so and he's made this decision fully advised of the consequences of such. I told him what instructions I would give. I even told him the consequences of his examination or his testifying could result in the cross-examination of him on his previous felony convictions. I believe this decision is knowingly and voluntarily made, so I will allow it.

Dkt. # 6-11, at 207.

Petitioner testified that his mother called the police on February 3, 2011, because he was attempting to clean a gun. Dkt. # 6-11, at 219-20. He testified he felt paranoid that day because he believed two black males had shot at him two weeks earlier while he was driving near 31st and Yale. Id. at 220-25. Petitioner testified that on February 5, 2011, he saw the victim, Joe Garfield, outside shoveling his driveway and that he briefly spoke with Garfield and Kenneth Love before going inside, getting his gun, getting his dog, and taking his dog for a walk. Id. at 227-29. He denied asking Garfield if he could borrow a shovel and testified he might have heard a gunshot while he was inside the house with his dog. Id. at 229-30. He also denied shooting Garfield and denied hitting him in the head with a shovel. Id. at 231, 258, 261, 264-65. On cross-examination, petitioner testified he had four prior felony convictions and that he knew as a convicted felon he should not have a gun. Dkt. # 6-11, at 238-43, 253-54, 256.

5

At the end of the five-day trial, the jury rejected petitioner's insanity defense and found him guilty as charged. Dkt. # 6-12, at 174-75. The jury recommended a sentence of life without the possibility of parole for the murder conviction and a sentence of life with the possibility of parole for the firearm conviction. Id. The trial court sentenced petitioner accordingly and ordered the sentences to be served consecutively. Dkt. # 6-15, at 30.

Petitioner filed a timely direct appeal with the Oklahoma Court of Criminal Appeals (OCCA), raising six propositions of error. Dkt. # 5-3, OCCA Op., at 1-2. By unpublished opinion filed June 10, 2014, in Case No. F-2012-695, the OCCA rejected each alleged error on the merits and affirmed petitioner's convictions and sentences. Id. at 3-11.

Petitioner filed the instant habeas petition on June 8, 2015. He alleges he is entitled to federal habeas relief on four grounds that mirror three of the six claims he presented to the OCCA on direct appeal:

> Ground 1:  The procedure by the District Court[] prior to the [petitioner's] testimony was insufficient to establish a knowing and competent decision to waive defense of not guilty by reason of insanity.
>
> Ground 2:  Excluding the deceased [sic] statement describing my behavior immediate[ly] before the offense of the homicide happen[ed] underminded [sic] my due process rights.
>
> Ground 3:  The procedure by the District Court[] prior to my testimony was insufficient to establish a knowing, intelligent, and competent decision to waive my defense.
>
> Ground 4:  Accumulation of error deprived me of a fair trial and due process.

Dkt. # 1, at 5, 7, 8, 10.[4]

---

[4] It is clear from the petition that Grounds 1 and 3 raise the same claim and rely on the same facts. Dkt. # 1, at 5, 8. As a result, the Court will consolidate Grounds 1 and 3 and refer to them, collectively, as Ground 1 without renumbering the remaining claims.

Respondent contends that 28 U.S.C. § 2254(d) bars habeas relief as to Grounds 1 and 4 because the OCCA's decision as to those claims was neither based on an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts. Dkt. # 5, at 14-28, 34-38. Respondent further contends that petitioner's Ground 2 claim (1) alleges only an error of state law and, (2) to the extent petitioner sufficiently alleges a federal due process claim, he fails to demonstrate that the exclusion of evidence rendered his trial fundamentally unfair. Id. at 28-34.

## *ANALYSIS*

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs this Court's review of petitioner's claims. 28 U.S.C. § 2254.[5] Under the AEDPA, a federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Id. § 2254(a). Further, because the OCCA decided each of petitioner's habeas claims on the merits, this Court may not grant relief unless petitioner demonstrates that the OCCA's adjudication of those claims either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," id. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003)

---

[5] Respondent concedes, and the Court finds, that petitioner timely filed his habeas petition, see 28 U.S.C. § 2244(d)(1)(A), and exhausted each of his habeas claims by presenting them to the OCCA on direct appeal, see id. § 2254(b)(1)(A). Dkt. # 5, at 2, 9-10.

(quoting Terry Williams v. Taylor, 529 U.S. 362, 412 (2000)). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." House v. Hatch, 527 F.3d 1010, 1018 (10th Cir. 2008).

Thus, "only if [a federal court] answer[s] affirmatively the threshold question as to the existence of clearly established federal law, may [the court] ask whether the state court decision is either contrary to or an unreasonable application of such law." Id. "To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (alterations in original) (quoting Terry Williams, 529 U.S. at 405, 406). When the state court's decision "'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Terry Williams, 529 U.S. at 413). An "unreasonable application of" clearly established federal law under § 2254(d)(1) "must be 'objectively unreasonable,' not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Lockyer, 538 U.S. at 75-76). Likewise, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). As previously stated, the federal court must also presume the correctness of the state court's factual findings unless the state prisoner rebuts that presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." Harrington v. Richter, 562 U.S. 86, 102 (2011). This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). Thus, as a precondition to obtaining federal habeas relief petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

Even if petitioner can make this showing, it does not necessarily follow that he is entitled to habeas relief. Rather, if he makes the requisite showing that merely permits this Court to review his constitutional claims de novo to determine whether he is entitled to habeas relief. See Milton v. Miller, 744 F.3d 660, 670-71 (10th Cir. 2014) (explaining that satisfaction of § 2254(d)'s standards "effectively removes AEDPA's prohibition on the issuance of a writ" and "requires [federal habeas court] to review de novo" petitioner's claims—without deference to state court's decision). And, even if the Court finds constitutional error on de novo review, it "must assess the prejudicial impact of [that] constitutional error . . . under the 'substantial and injurious effect' standard set forth in Brecht [v. Abrahamson, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness." Fry v. Pliler, 551 U.S. 112, 121-22 (2007). Under the Brecht standard, this Court will grant habeas relief only if it "is in grave doubt as to the harmlessness of an error that affects substantial rights." O'Neal v. McAninch, 513 U.S. 432, 445 (1995).

9

I.      **Competency claim (Ground 1)**[6]

In Ground 1, petitioner alleges that the trial court did not adequately inquire into his competency before it determined that his decision to testify at trial was competent, knowing and intelligent. Dkt. # 1, at 5, 8. Petitioner contends his decision to testify and deny any involvement in the shooting called his competency into question because his "not guilty" defense was inconsistent with the insanity defense presented by defense counsel. Id. On direct appeal, petitioner argued that "[a]djudicative competency does not mean that a defendant is competent to make all decisions, irrespective of complexity or importance." Id. He acknowledged, however, "that the United [States] Supreme Court has been unwilling to address this commonsense notion head on," and cited Dusky v. United States, 362 U.S. 402 (1960), as establishing a "single standard for competency."[7] Dkt. # 5-1, at 39-40. In addition to his claim that the trial court should have held a competency hearing before allowing petitioner to testify, petitioner argued that defense counsel was ineffective for failing to request a competency hearing. Id.

---

[6] Because petitioner proceeds pro se, the Court must liberally construe his pleadings. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). To that end, the Court finds it helpful to consider petitioner's direct appeal brief in understanding his arguments. But the rule of liberal construction does not require this Court to become an advocate by creating arguments on petitioner's behalf. Id.; see also United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir.1994) (noting that courts "are not required to fashion [a pro se litigant's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.").

[7] Dusky provides the following test for competency to stand trial: "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." 362 U.S. at 402.

The OCCA understood petitioner's claim as asserting (1) that the trial court should have conducted a competency proceeding under OKLA. STAT. tit. 22, § 1175.2 before permitting him to testify and (2) that trial counsel was ineffective for not requesting that proceeding. Dkt. # 5-3, OCCA Op., at 8. The OCCA rejected both parts of petitioner's claim. Applying the two-prong competency test it adopted in Lambert v. State, 888 P.2d 494, 497-98 (Okla. Crim. App. 1994),[8] Dkt. # 5-3 at 9, the OCCA found evidence in the record supporting petitioner's competency. It found that when petitioner testified at trial, his testimony was "lucid and rational," that "[h]is responses to questions demonstrated clearly that he understood the nature of the proceeding and the evidence against him," and that his "own expert psychologist, who had experience in performing competency evaluations, and who heard [petitioner] testify, opined that [petitioner] was competent." Id. The OCCA further found that petitioner "had sufficient ability to consult with his attorney and that he had a rational and actual understanding of the proceeding against him." Id. at 9. The OCCA reasoned, "[b]ecause [petitioner] was competent to stand trial, there was no reason for the trial judge to conduct a separate proceeding under 22 O.S. 2011, § 1175.2 to determine whether he was competent to testify." Id. at 9-10. The OCCA rejected petitioner's ineffective-assistance-of-counsel claim as "meritless." Id. at 10. It found the record "clear" that petitioner was competent to stand trial, his attorney advised him against testifying, and he acted contrary to that advice. Applying Strickland v. Washington, 466 U.S. 668 (1984), the OCCA found these facts insufficient to show that counsel's failure to request a competency hearing was either deficient or prejudicial. Id. at 10.

---

[8] The Lambert test "parrots" the Dusky standard. Lambert, 888 P.2d at 498.

For two reasons, the Court finds petitioner is not entitled to federal habeas relief on his Ground 1 claim. First, petitioner fails to cite any clearly established federal law supporting his claim that a trial court, faced with a defendant who is competent to stand trial but mentally ill, must conduct a separate competency hearing to determine whether the defendant is competent to make the decision to testify. Dkt. # 1, at 5, 8. As respondent points out, petitioner expressly acknowledged the absence of any Supreme Court precedent squarely addressing this issue in his direct appeal brief. Dkt. # 5, at 17; see Dkt. # 5-1, at 31-32 (suggesting the Supreme Court has chosen to "stick with a single standard for competency," i.e., the Dusky standard). Because there is no Supreme Court precedent clearly establishing the rule petitioner asked the OCCA to apply, he cannot show, under § 2254(d)(1), that the OCCA's decision was either contrary to or an unreasonable application of clearly established federal law. See House, 527 F.3d at 1017.

Second, petitioner cannot show, under § 2254(d)(2), that the OCCA's decision rejecting his ineffective-assistance-of-counsel claim was either contrary to, or an unreasonable application of, clearly established federal law. As stated, the OCCA applied Strickland to reject that claim. Dkt. # 5-3, at 10. Thus, to obtain habeas relief on his ineffective-assistance-of-counsel claim, petitioner must demonstrate that the OCCA unreasonably applied Strickland to the facts of his case. See Richter, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard."). Here, the OCCA's factual findings, that petitioner was competent to stand trial, that counsel advised him not to testify, and that petitioner eschewed that advice, not only are presumed correct under § 2254(e)(2) but also are amply supported by the record. The Court is confident that fairminded jurists would not disagree with the OCCA's legal

12

determination that those facts did not support a finding that defense counsel performed deficiently by failing to request a competency hearing before petitioner testified.

For these reasons, the Court denies federal habeas relief as to Ground 1.

## II. Exclusion of evidence (Ground 2)

In Ground 2, petitioner alleges that the trial court violated his "due process rights" by excluding the statement the victim made to his wife several minutes before his murder wherein the victim described petitioner as "crazy." Dkt. # 1 at 7. On direct appeal, petitioner alleged "[i]t was reversible error" to exclude the victim's statement because it was admissible as a present sense impression under OKLA. STAT. tit. 12, § 2803(1). Dkt. # 5-1, at 26-31. In support of this argument, petitioner directed the OCCA to a law review article and two cases discussing the hearsay exception for a present sense impression: Williams v. State, 915 P.2d 371 (Okla. Crim. App. 1996), and First Southwest Lloyds Ins. Co. v. MacDowell, 769 S.W.2d 954 (Tex. App. 1989). Id. at 28-30. Petitioner further asserted, in his issue statement, that the erroneous exclusion of evidence "undermined his right to a fair trial and his right to fully present his defense pursuant to the Fourteenth Amendment." Id. at 26.

Relying solely on state law, the OCCA rejected petitioner's claim. It reasoned,

Section 2803(1) provides that a statement is not excludable as hearsay if it is a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately, thereafter." In this instance, [the victim's] statement that [petitioner] was crazy, might be construed as a statement of his impression of [petitioner's] mental state, or as the State points out, might be construed idiomatically as [the victim] saying to his wife that [petitioner] was crazy if he thought he could use my snow shovel. In either case, the statement was not one describing an event or condition. Rather, it was statement about [petitioner]. Because the statement did not describe an event or condition, the trial judge properly determined that the statement did not qualify for admission as a present sense impression. *See Hancock v. State*, 2007 OK CR 9, ¶ 84, 155 P.3d 796, 816 ("[t]he foundational requirements for a present sense impression include: a startling event;

13

> a statement explaining the event or condition; made while the declarant is perceiving the event or immediately after the event"). The trial judge did not abuse its discretion by excluding the statement.

Dkt. # 5-3, OCCA Op., at 5-6. The OCCA did not explicitly address petitioner's undeveloped assertion that the exclusion of the victim's statement violated his due process rights under the Fourteenth Amendment. Id.

For two reasons, the Court finds petitioner is not entitled to federal habeas relief on this claim. First, as he did on direct appeal, petitioner primarily presents this claim as one alleging a state-law evidentiary error, not a constitutional claim. In his petition, he reasserts his argument that the victim's statement should have been admitted as a present sense impression, or possibly an excited utterance, rather than excluded as inadmissible hearsay. Dkt. # 1, at 7. "As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence." Moore v. Marr, 254 F.3d 1235, 1246 (10th Cir. 2001) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).

Second, even (1) assuming that petitioner's reference to the "Fourteenth Amendment" was sufficient to put the OCCA on notice that he was asserting a federal claim, and (2) presuming that the OCCA implicitly rejected that federal claim on the merits, petitioner fails to argue, much less demonstrate, that there was "no reasonable basis for the state court to deny relief." Richter, 562 U.S.

at 98.⁹  "The Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  But the Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." Id. Applying state law, the OCCA determined that the victim's statement was properly excluded as inadmissible hearsay.  Because the OCCA found that the trial court committed no error in excluding the evidence, it would have been entirely reasonable for the OCCA to further determine that the trial court committed no constitutional error.  Alternatively, it would have been reasonable for the OCCA to determine, in light of the entire trial, that the exclusion of the victim's statement was not "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." Williamson v. Parker, 705 F. App'x 677, 682-83 (10th Cir. 2017) (quoting Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002)).  Even without the victim's statement describing petitioner as "crazy," the jury heard ample evidence in support of petitioner's insanity defense. Petitioner's mother testified that, in the days leading up to the murder, petitioner appeared paranoid, covered the windows of their home with towels, ransacked the basement, sprinkled

---

⁹     In Richter, the United States Supreme Court explained that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." 562 U.S. at 99. Richter further explained that when "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden [under § 2254(d)] still must be met by showing there was no reasonable basis for the state court to deny relief." Id. at 98.  Assuming the federal claim was sufficiently presented on direct appeal, there is no indication it was rejected on procedural grounds.  Thus, § 2254(d) applies despite the absence of any mention of the federal claim in the OCCA's decision. Id. at 100.

paprika around the doors, and paced around the house talking to himself and pacing with a gun. Dkt. # 6-11, at 21-58, 122, 130-31. An investigator from the public defenders' office who interviewed petitioner after the murder testified that petitioner exhibited paranoia, believed he had acted in self-defense by shooting the victim because the victim and others were plotting to kill him, and also believed "he was being gassed in jail." Id. at 147-54, 160-61. Finally, petitioner's mental health expert, Dr. Curtis Grundy, testified that petitioner suffered from schizoaffective disorder, bipolar type, and antisocial personality disorder. Dkt. # 6-12, at 12-13, 40. Dr. Grundy also testified that two days before the murder petitioner called his aunt and implored her to call the police because he heard people walking around in his attic. Id. at 35. On this record, petitioner cannot show that fairminded jurists would disagree with the OCCA's implicit decision that the exclusion of the victim's statement did not render his trial fundamentally unfair. Thus, the Court denies habeas relief as to Ground 2.

### III. Cumulative error (Ground 4)

Finally, in Ground 4, petitioner asserts that the cumulative effect of trial errors deprived him of his fundamental right to a fair trial. Dkt. # 1, at 10. The OCCA found no errors to accumulate and rejected this claim. Dkt. # 5-3, OCCA Op., at 11.

Respondent argues petitioner is not entitled to habeas relief on this claim because "there is no clearly established federal law, 'as determined by the Supreme Court of the United States,' controlling this particular claim." Dkt. # 5, at 35 & n. 6. The Tenth Circuit has recognized the existence of a circuit split as to "whether the need to conduct a cumulative-error analysis is clearly established federal law under § 2254(d)(1)." Cole v. Trammell, 755 F.3d 1142, 1177 n.14 (10th Cir. 2014) (quoting Hooks v. Workman, 689 F.3d 1148, 1194 n.24 (10th Cir. 2012)). Nevertheless, as

16

respondent acknowledges, *see* Dkt. # 5 at 35, the Tenth Circuit treats the cumulative-error doctrine as clearly established federal law for purposes of habeas review. See Cole, 755 F.3d at 1177 n.14; Darks v. Mullin, 327 F.3d 1001, 1017-18 (10th Cir. 2003).

"[I]n the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." Alverson v. Workman, 595 F.3d 1142, 1162 (10th Cir. 2010) (internal quotation marks and brackets omitted). However, a cumulative-error analysis is warranted "only if there are at least two errors." Lott v. Trammell, 705 F.3d 1167, 1223 (10th Cir. 2013) (quoting Hooks, 689 F.3d at 1194-95). Because the Court finds there are no constitutional errors, the Court denies habeas relief on Ground 4.

## *CONCLUSION*

Because petitioner has not shown that he is being held in custody in violation of the Constitution or federal law, the Court denies his petition for a writ of habeas corpus.

## Certificate of Appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects a petitioner's constitutional claims on the merits, the applicant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because

17

the Court finds its assessment of petitioner's constitutional claims is not subject to debate among reasonable jurists, the Court denies a certificate of appealability.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the substitution of Joe M. Allbaugh in place of Tim Wilkinson as party respondent.

2. The petition for a writ of habeas corpus (Dkt. # 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this case.

**DATED** this 21st day of September, 2018.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE